IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ERIKA MEYER,

        Plaintiff,

   vs.                   **Case No. 04-4099-RDR**

CHRISTOPHER NAVA, et al.,

        Defendants.

_____

<u>**MEMORANDUM AND ORDER**</u>

    This is a civil rights action brought by the plaintiff pursuant to 42 U.S.C. § 1983 against Christopher Nava, a former employee at the Lyon County Jail; the Board of County Commissioners of Lyon County, Kansas (Lyon County); and Gary Eichorn, Sheriff of Lyon County, Kansas (Sheriff Eichorn). Plaintiff seeks damages for injuries she suffered while she was incarcerated at the Lyon County Jail. This matter is presently before the court upon the motion of defendants Lyon County and Sheriff Eichorn for summary judgment.

I.

    Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See Anderson, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. Id. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. The court must consider the record in the light most favorable to the nonmoving party. See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985). The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive

2

determination of every action." <u>Celotex</u>, 477 U.S. at 327 (quoting
Fed.R.Civ.P. 1).

II.

The following facts are either uncontroverted or shall be
considered true for the purposes of deciding this summary judgment
motion.  On or about May 11, 2003, plaintiff was arrested for
driving under the influence by an officer with the Emporia Police
Department.  Plaintiff was taken to the Lyon County jail in
Emporia, Kansas.  Plaintiff was very intoxicated.  Nava was the
acting shift supervisor at the jail.  Plaintiff was initially taken
to the visitation room.  She was then escorted to the bathroom by
Nava.  After she finished using the bathroom, they stopped in the
medication room for some period.  In the medication room, plaintiff
and Nava were alone.  Plaintiff asked Nava for a cigarette and he
denied the request.  Nothing happened at that time.  Subsequently,
Nava returned plaintiff to the visitation room, which was used as
a holding cell.  Nava later returned with cigarettes and then took
her into an adjoining video room.  In that room, he raped,
sodomized and sexually battered plaintiff.

Gary Eichorn is the sheriff of Lyon County, Kansas and was
serving in that capacity on May 11, 2003.  He was not present at
the Lyon County jail when the events involving plaintiff occurred
on May 11, 2003.  Lyon County jail policies in effect on that date
prohibited male jailers from being alone with female inmates absent

3

special circumstances. This policy had been in effect since January 2002. After her release, plaintiff reported the sexual abuse by Nava to her father, Terry Meyer. Mr. Meyer reported the incident to Sheriff Eichorn on the morning of May 11, 2003. Sheriff Eichorn immediately requested an investigation by the Kansas Bureau of Investigation and suspended Nava from duty. Nava was eventually convicted of rape, aggravated criminal sodomy, attempted aggravated criminal sodomy and traffic in contraband in a correctional institution. He is currently serving his sentence with the Kansas Department of Corrections.

Sheriff Eichorn took office as sheriff of Lyon County in January 2001. Nava was already an employee of the sheriff's office at that time. He had been hired by former Sheriff Cliff Hacker. Brian Anstey was in charge of the jail on a day-to-day basis as the jail administrator. He had the rank of captain. He became jail administrator in 1993. The chain of command at the jail was as follows: Sheriff Eichorn, the Undersheriff, Captain Anstey, and then the shift supervisors, who held the rank of lieutenant. It was the responsibility of a lieutenant to bring any policy violation to the attention of Captain Anstey or the acting shift supervisor. Lieutenants also had an obligation to correct any violation if they saw an acting supervisor in violation of a jail procedure.

Nava was hired as a jailer in June 2000. Nava had a criminal

4

record of juvenile offenses from 1993 to 1995, including misdemeanor theft, misdemeanor battery, and criminal damage to property.  He had also been charged with drug possession as a juvenile, but it was dismissed in late 1996.

Within the last year of his employment, Nava became acting supervisor of the first shift, which was the midnight to 8:00 a.m. shift.  When Nava served as the acting shift supervisor, he had authority to assign duties during the shift itself to other jailers on that shift.  There were usually three jailers, including Nava, on duty during a weekend night shift.  He had the authority to place arrestees in a particular room or cell once they came into the jail.  There was a shortage of cells in May 2003 in the Lyon County jail because of ongoing construction.  Other rooms were being used for holding inmates, such as the medication room or the visitation room.

Nava was aware of the policy prohibiting male jailers from being alone with female inmates.  He, however, indicated that male jailers would often be alone with female inmates prior to May 11, 2003.  The policy prohibiting male jailers from being alone with female inmates had arisen in January 2002 because a male jailer had been spending too much time in the female jail pod visiting with the female inmates.

Sheriff Eichorn was responsible for adopting policies at the jail.  No one else, including Captain Anstey, had the authority to

establish or change policy.  Captain Anstey was not aware of any sexual molestation or harassment by jailers toward female inmates prior to May 11, 2003.  Prior to May 11, 2003, neither Sheriff Eichorn nor Captain Anstey were aware of any male jailer being alone with any female inmate.  Sheriff Eichorn had been made aware of the jailer in the past who had been spending too much time in the female pod area with female inmates.  After the May 11th incident involving plaintiff and Nava, Sheriff Eichorn received a report that another jailer had been in a relationship with a female inmate.  This allegation was immediately investigated.  This jailer was ultimately allowed to resign.

In March 2003, Sheriff Eichorn and Captain Anstey were informed of an incident that month where Nava called a former female inmate on two occasions after she was released from jail and asked her on a date.  At the time, there was no policy that prohibited such conduct.

During the investigation of the May 11th incident, Captain Anstey learned that joking had been going on between jailers, which included sexual comments about inmates.  This sexual banter included references to an inmate's breasts or buttocks.  These conversations were strictly between the jailers and were not with the inmates.  Nava did not believe that Sheriff Eichorn or Captain Anstey were aware of this practice.

Rhonda Schwindt, one of the three jailers on duty on May 11th,

6

saw Nava and plaintiff in the medication room alone together in the early morning hours.  Schwindt called Nava between 2:30 and 3:30 a.m. and asked in a joking manner if he was screwing her.  On the night that plaintiff was booked into jail, Nava told Schwindt that he thought that plaintiff had a "nice rack."  Schwindt, however, had no indication that Nava had any sexual relationship with plaintiff or any other female inmate.  Schwindt never reported Nava's "rack" comment or other similar comments by a jailer to any supervisor.

Penny Morgan, one of the lieutenants at the Lyon County jail, came in early for her shift some time before 4:00 a.m. on May 11, 2003.  She also observed Nava alone with plaintiff in the medication room, which she thought was unusual.  Morgan did not report the matter or confront Nava, but she did ask the other jailers why Nava was alone with a female inmate.

After the incident between Nava and plaintiff on May 11th, a woman came forward who indicated that, while she was an inmate at the Lyon County jail in April 2003, she and Nava kissed and he sexually groped her.  This woman indicated that this activity was entirely consensual and that she called Nava afterwards in an attempt to see him again.  She never reported the incident and no one at the jail was aware of it.

In May 2003, the inside of the Lyon County jail did not have video surveillance, though there had been surveillance video on the

7

outside perimeter of the jail since the 1990's.  Video cameras in the interior of the jail were installed in conjunction with a jail remodeling process that had started prior to May 11, 2003 but was not completed until early 2005.  Although Sheriff Eichorn had requested video surveillance prior to May 11, 2003, budgetary constraints prevented the purchase of such equipment.

Prior to the incident of May 11, 2003, Sheriff Eichorn had never heard of any sexual impropriety or misconduct going on between a jailer and an inmate at the Lyon County jail.  He had never received a complaint from an inmate of any sexual misconduct by a jailer.  He was unaware of the sexual banter among the jailers until an investigation was conducted following the May 11th incident.

None of the jailers on duty on May 11th made it known that Nava had been alone with plaintiff prior to the rape occurring that morning. At one point during the shift on May 11, 2003, Nava asked Chad Dean, another jailer on duty that night, in reference to plaintiff if he would "fuck that." Dean had not heard Nava make similar comments prior to that night.

The court shall consider other facts as we address the arguments raised by the parties.

### III.

In their motion, the defendants contend that (1) plaintiff's official capacity claims against Sheriff Eichorn and Nava must be

dismissed; (2) plaintiff cannot bring an excessive force claim under the Fourth Amendment or a procedural due process claim under the Fourteenth Amendment; (3) Lyon County and Sheriff Eichorn are not liable under § 1983; and (4) plaintiff's negligence claim fails as a matter of law.

A. *Official Capacity Claims Against Sheriff Eichorn and Nava*

Initially, the court agrees with the defendants' argument concerning the official capacity suits against defendants Sheriff Eichorn and Nava. These claims must be dismissed. <u>See</u> <u>Sudac v. Hoang</u>, 378 F.Supp.2d 1298, 1407 n. 9 (D.Kan. 2005); <u>Sims v. Unified Government of Wyandotte County</u>, 120 F.Supp.2d 938, 945 (D.Kan. 2000). In reaching this conclusion, the court notes that plaintiff failed to offer any argument to this issue in her response to defendants' motion for summary judgment.

B. *Fourth Amendment or Fourteenth Amendment Claims*

In her complaint and again in the pretrial order, plaintiff asserts claims under § 1983 based upon violations of the Fourth Amendment and the Fourteenth Amendment. The defendants contend that her claims must be asserted based upon the Eighth Amendment. Thus, they argue that Counts I and II of her complaint must be dismissed.

In her complaint and in the pretrial order, plaintiff contended that the defendants engaged in the unreasonable use of force in violation of the Fourth Amendment and violated her rights

of procedural and substantive due process under the Fourteenth Amendment.  After defendants filed the instant motion for summary judgment, plaintiff sought to amend the pretrial order to add an Eighth Amendment claim.  Plaintiff acknowledged that the trend in the Tenth Circuit appeared to indicate that the Eighth Amendment governed the type of claims she was asserting here.  She did, however, suggest the appropriate standard was an objective, not a subjective, one under the Eighth Amendment.

Although courts have suggested the application of various standards in cases where there are allegations of sexual abuse against an inmate by correctional personnel, we are convinced that plaintiff's claims are governed by the Eighth Amendment.  The Eighth Amendment protects prisoners from cruel and unusual punishment.  It "governs both the treatment of prisoners receive while incarcerated and the conditions of confinement, requiring humane conditions and an environment of safety." Smith v. Cochran, 216 F.Supp.2d 1286, 1291 (N.D.Okla. 2001), aff'd, 339 F.3d 1205 (10th Cir. 2003) ("Eighth Amendment is the proper vehicle for evaluating excessive force claims involving prisoners.").

To properly show a violation of the Eighth Amendment, the following requirements must be met:  (1) the alleged deprivation must be "objectively, sufficiently serious;" and (2) the state official must have a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

10

Accordingly, the court shall analyze plaintiff's claim under the Eighth Amendment standards rather than dismiss Counts I and II. The court will allow the plaintiff's amendment to the pretrial order to the extent that plaintiff seeks to proceed under the Eighth Amendment. Contrary to the contention of the plaintiff, however, the court finds that the appropriate deliberate indifference standard under the Eighth Amendment is a subjective requirement. <u>Gonzales v. Martinez</u>, 403 F.3d 1179, 1186 (10th Cir. 2005).

C. *Liability of Lyon County/Sheriff Eichorn*

In the pretrial order, plaintiff asserts three theories of governmental liability: (1) Nava was a policymaker because he was an acting shift supervisor and had the authority to make decisions regarding the care and treatment of inmates; (2) Sheriff Eichorn was aware or should have reasonably been aware of a sexually hostile environment and failed to properly supervise jail employees and Nava's sexual harassment of women; and (3) the policies of Lyon County in the operation of the jail allowed male jailers, including Nava, the opportunity to take charge of female inmates and to remove female inmates from an area where they were protected to places where they could be abused.

A government entity may not be held liable under 42 U.S.C. § 1983 by way of the respondeat superior doctrine. <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658, 691 (1978); <u>City of</u>

St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  To obtain a judgment against a governmental entity, a plaintiff must prove that the entity itself supported the violation of rights alleged. Monell, 436 U.S. at 692-95; Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).  Section 1983 liability attaches to a governmental entity only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ."  Monell, 436 U.S. at 694.  To determine the identity of a final policymaker, the court must consider whether:  1) the official is meaningfully constrained by policies made by another; 2) the official's decisions are subject to meaningful review; and 3) the decisions are within the realm of the official's authority. Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995). Liability will be imposed on a government entity for the actions of an official who is subject to review by other policymakers or who is limited by the policy and decisions of others only if the final policymaker ratifies the decision of the subordinate.  Praprotnik, 485 U.S. at 127.  The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation.  Id. ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their

decision is final."); <u>David v. City & County of Denver</u>, 101 F.3d 1344, 1358 (10th Cir. 1996).

Whether an individual is a final policymaker for purposes of § 1983 liability is a legal issue to be determined by the court based on state and local law. <u>Dill v. City of Edmond</u>, 155 F.3d 1193, 1210 (10th Cir. 1998). The law in Kansas is clear that the sheriff is the official in charge of the county jail. K.S.A. 19-811. A review of the record before the court fails to show any support for plaintiff's contention that Nava was a final policymaker. Nava had no authority to make or change county policy. In addition, even assuming that Nava was a policymaker, the sheriff had authority to review any policy Nava enacted. Though Nava had some discretion to place plaintiff in a particular area of the jail, this discretion does not endow him with final policymaking authority over the domain of prisoner protocol or placement. "An official is not a policymaker simply by virtue of possessing discretionary authority to exercise certain functions by municipal policy; what is required is final authority to establish the policy itself." <u>Stewart v. Board of Commissioners for Shawnee County</u>, 320 F.Supp.2d 1143, 1152 (D.Kan. 2004). As noted previously, the authority to establish policy remained with Sheriff Eichorn even though some discretion was given to Nava. <u>See</u> <u>Ware v. Unified School Dist. No. 492</u>, 902 F.2d 815, 818 (10th Cir. 1990) ("Delegation does not occur when a subordinate's decisions are

constrained by policies not of his making or when those decisions are subject to review by the authorized policymaker."). In sum, the court finds no merit to plaintiff's argument that Nava was a final policymaker.

The court next turns to plaintiff's claim that Sheriff Eichorn failed to properly supervise Nava and the other jail employees. "A supervisor is not liable under section 1983 unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988) (internal quotation marks and alterations omitted). Additionally, "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).

An explanation of the deliberate indifference standard in a prison setting is set forth in Gonzales as follows:

> [I]n a claim that officials failed to prevent harm, an inmate must show, first, she is incarcerated under conditions posing a substantial risk of serious harm, and, second, that officials had a sufficiently culpable state of mind. Thus, the deliberate indifference standard in a prison-conditions case is a subjective and not an objective requirement. That is, a prison official is liable only if the official knows of and disregards an excessive risk to inmate health and safety. It is not enough to establish that the official should have known of the risk of harm.

Gonzales, 403 F.3d at 1186 (internal quotations and citations

omitted).

After a careful review of the record, the court finds that plaintiff has failed to provide adequate evidence of knowledge by Sheriff Eichorn of an excessive risk to female inmates. Plaintiff appears to rely upon the following matters to demonstrate deliberate indifference by Sheriff Eichorn: (1) Nava violated the jail policy that prohibited male jailers from being alone with female inmates on May 11th and on other occasions; (2)in May 2002, a jailer spent too much time in the female jail pod talking with several females; (3) Nava had a juvenile record when he was hired; (4) Nava may have engaged in a consensual encounter with an inmate in April 2003; (5) Nava telephoned a female inmate prior to May 11th after her release from jail; and (6) another male jailer had a relationship with an inmate where letters were sent and she would masturbate for him while she was an inmate. The problem with the matters relied upon by plaintiff is that (a) Sheriff Eichorn was unaware of most of the incidents noted until after May 11th or (b) they fail to demonstrate an excessive risk to the female inmates' health and safety. For example, even if Sheriff Eichorn was aware that the policy prohibiting male jailers from being alone with female inmates had been violated by Nava or others, this is insufficient to demonstrate knowledge of a substantial risk of serious harm to a female inmate. See Gonzales, 403 F.3d at 1186. The other allegations concerning Nava's actions with female inmates

and the actions of another male jailer with a female inmate must fail for similar reasons.  His consensual encounter with an inmate in April 2003 and his telephone calls to an inmate after her release simply fail to demonstrate knowledge of a substantial risk of serious harm to a female inmate.  See Andrews v. Fowler, 98 F.3d 1069, 1075-76 (8th Cir. 1996) (two prior incidents of misconduct with sexual overtones in regard to an officer does not establish a "persistent and widespread" pattern of misconduct that would establish a municipal policy or custom of overlooking police misconduct or a pattern of failing to investigate it).  The same must be said for the other encounter by the other male jailer.  Finally, we fail to see how Nava's prior juvenile record provides any support for the plaintiff's contention.  The record fails to show any pattern of sexual abuse by or inmate mistreatment by Nava prior to May 11th.  None of the juvenile offenses concerned any type of improper sexual activity.  Moreover, there is no indication that Sheriff Eichorn had any knowledge of Nava's past record.   The evidence is simply inadequate to show deliberate indifference.  See Board of County Commissioners of Bryan County v. Brown, 502 U.S. 397, 412 (1997) (deliberate indifference not met unless plaintiff can show that propensity for sexual abuse would be "highly likely" and a "plainly obvious consequence of the hiring decision"); Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Merely showing that a municipal officer engaged in less than careful scrutiny of

16

an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of 'deliberate indifference'. . . Culpability requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged. Establishing municipal liability in the hiring context requires a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff"). In sum, the court must find that the evidence is insufficient to show knowledge by Sheriff Eichorn of an excessive risk to female inmates.

Plaintiff has also suggested that Sheriff Eichorn's failure to properly monitor the jail regularly provides a basis for relief. However, as again previously noted, plaintiff has not produced sufficient evidence that Sheriff Eichorn was aware of any incident where a jailer had spent time alone with a female inmate at the jail prior to May 11th, much less that an act of sexual misconduct occurred as a result. Thus, plaintiff is unable to show a causal connection between Sheriff Eichorn being in the jail more often and the sexual assault suffered by her. See Estate of Sisk v. Manzanares, 262 F.Supp.2d 1162, 1179 (D.Kan. 2002) (in action by estate of deceased prisoner, who committed suicide, fact that jail supervisor did not visit jail modules very often is insufficient to demonstrate deliberate indifference to need to provide adequate medical care to suicidal inmates).

This case differs substantially from the case relied upon by plaintiff in her response to the defendants' motion for summary judgment.  Plaintiff suggests that <u>Gonzales</u> is a "mirror image" of the instant case.  Comparing the factual background in that case with this case, we simply cannot agree.  In <u>Gonzales</u>, an inmate brought a § 1983 action against the county, the county sheriff and jail officials, alleging that she was sexually assaulted at the county jail.  The district court entered summary judgment for the sheriff, and plaintiff appealed.  On appeal, the Tenth Circuit found sufficient evidence of sheriff's knowledge of a substantial risk of harm to the inmates at the jail.  The Court noted the following:  (1) sheriff explicitly stated that he did not want to investigate allegations of problems at the jail; (2) sheriff ignored inmate complaints; (3) sheriff left two "upset" female inmates who had accused jailers of sexually assaulting them in the custody and control of the men accused of the assault.  <u>Gonzales</u>, 403 F.2d at 1187.

Here, the uncontroverted facts differ dramatically from those in <u>Gonzales</u>.  Plaintiff has failed to produce any evidence that Sheriff Eichorn and his immediate subordinate, Captain Anstey, were aware of any of the incidents involving inmates and jailers at the Lyon County jail prior to May 11th.  Moreover, the incidents noted by plaintiff fail to show any risk of harm to the inmates.  Unlike the circumstances in <u>Gonzales</u>, plaintiff has failed to offer

18

sufficient evidence that Sheriff Eichorn had the requisite knowledge of substantial risk to proceed on her Eighth Amendment claim.

Plaintiff also suggests that there was a sexually charged atmosphere at the jail because female and male jailers made sexual comments between themselves about the inmates.  Once again, there is no evidence that Sheriff Eichorn, Captain Anstey or any supervisor knew about this practice and disregarded it.  Yet, even assuming that any of them knew that a jailer would occasionally make an inappropriate remark about an inmate, there is no evidence that it was done in the presence of an inmate or that one complained about it.  In addition, there is no evidence that any such talk ever led to a sexual assault upon an inmate, except for the instant incident.

Finally, the court shall turn to any potential liability of Lyon County.  As correctly pointed out by the defendants, plaintiff has made no specific allegations against the Board of County Commissioners in the pretrial order.  Moreover, there is no allegation that the Board ever personally participated in the denial of plaintiff's constitutional rights.  In fact, the Board has no authority to supervise or discipline the Sheriff or his subordinates.  Lee v. Wyandotte County, 586 F.Supp. 236, 238 (D.Kan. 1984); see also K.S.A. 19-805.

Again, as suggested by the defendants, the only conceivable

19

claim against Lyon County concerns the alleged failure to timely install surveillance video to monitor areas inside the jail. However, the record shows that no sexual assaults had occurred in the jail prior to May 11th. Thus, there is no evidence that would substantiate that either Sheriff Eichorn or Lyon County ignored a substantial risk with deliberate indifference.

IV.

In her state law negligence claim brought under the Kansas Tort Claims Act (KTCA), plaintiff contends that defendants Sheriff Eichorn and Board of County Commissioners were negligent in fulfilling their duties to protect her (1) by placing her with jailers who were not properly supervised; and (2) by allowing Nava, whom they knew or should have known had "proclivities" toward sexually harassing female inmates, to have contact with her. Plaintiff also suggests that the defendants failed to properly supervise Nava and/or placed her with him when he was known to have "significant criminal activity as a juvenile" and that he "sexually abused female inmates."  The defendants contend that plaintiff's negligence claims must fail as a matter of law for the following reasons:  (1) Nava's acts were not authorized and were done outside the scope of his employment and for his own personal purposes; (2) the immunities provided under the KTCA; and (3) they were not negligent.

Lyon County and Sheriff Eichorn contend that they cannot be

20

held liable under the KTCA because Nava's actions were not within the scope of his employment.  They further assert that plaintiff's claims must fail based upon the immunities provided by the KTCA. Finally, they argue that the evidence in the record fails to show that they were negligent.

The court shall first turn to the defendants' scope of employment argument.  The KTCA consents to suit against state governmental entities for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of employment.  K.S.A. § 75-6103.  "Under the [KTCA], to determine if an employee is acting within the scope of employment the court considers:  (1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the state's business; (2) whether there was express or implied authority to perform the act in question; and (3) whether the employee's act was reasonably foreseeable by the State. The liability of the State for an act of an employee depends . . . upon whether the employee, when the employee did the wrong, was acting in the prosecution of the State's business and within the scope of the employee's authority, or had stepped aside from that business and done an individual wrong."  Commerce Bank of St. Joseph v. Kansas, 251 Kan. 207, 833 P.2d 996, 1001 (1992).

In considering the aforementioned factors, the court finds that Nava's actions in sexually assaulting the plaintiff were not

within the scope of his employment.   There is little question on the first factor that Nava was acting for his personal benefit and not in furtherance of any business of Lyon County.   In addition, with regard to the second factor, there is also no dispute that there was no express or implied authority to perform the acts in which he engaged with plaintiff.   Finally, the court is not persuaded that the acts were foreseeable in the furtherance of his duties.   Accordingly, the court finds that the defendants are not liable under the KTCA because Nava was not acting within the scope of employment at the time he sexually assaulted plaintiff.   See Casas v. City of Overland Park, 2001 WL 584426 at *8-9 (D.Kan. 2001).

With this decision, the court need not consider the other arguments raised by the defendants on the KTCA claim.   The court finds that the defendants are entitled to summary judgment on this claim as well.

**IT IS THEREFORE ORDERED** that plaintiff's motion to amend the pretrial order (Doc. # 72) is hereby granted.   Plaintiff shall be allowed to amend the pretrial order to assert a claim against the defendants based upon the Eighth Amendment.

**IT IS FURTHER ORDERED** that the motion of defendants (Board of County Commissioners of Lyon County, Kansas and Sheriff Gary Eichorn) for summary judgment (Doc. # 62) be hereby granted. Judgment is hereby entered for these defendants on all claims

asserted by plaintiff.

  **IT IS SO ORDERED.**

  Dated this 30th day of August, 2007 at Topeka, Kansas.


           s/Richard D. Rogers
           United States District Judge